UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| NCW Properties, LLC, | ) | Case No. 18bk20215 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| Donald A. Stukes, Liquidating Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. No. 20ap00246 |
| v. | ) | |
| | ) | Judge Timothy A. Barnes |
| John Argoudelis, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

TIMOTHY A. BARNES, Judge.

### MEMORANDUM DECISION

This matter comes on for consideration on Defendant John Argoudelis' Motion for Summary Judgment [Adv. Dkt. No. 83][1] (the "Motion") brought by John Argoudelis (the "Defendant") in the above-captioned case. In the Motion, the Defendant argues that Donald A. Stukes (the "Plaintiff") has failed to provide any evidence to support elements of the two fraudulent transfer counts of the Liquidating Trustee's Complaint to Avoid and Recover Transfers [Adv. Dkt. No. 1] (the "Complaint") and thus the Defendant should be entitled to summary judgment in his favor on those two counts. In the alternative, the Defendant argues that there is no material fact in dispute and that he is entitled to judgment in his favor as a matter of law with respect to his good faith for value defense to the same two fraudulent transfer counts. If the Defendant is successful under either theory and the court finds that summary judgment in favor of the Defendant is appropriate with respect to both fraudulent transfer counts, the Defendant would also be entitled to judgment on the last count of the Complaint—recovery of avoided transfers—as it relies on either of the two fraudulent transfer counts. Thus success on the Motion would resolve this matter entirely.

---

[1] References to docket entries in this adversary proceeding will be noted as "Adv. Dkt. No. ___." References to docket entries in the underlying bankruptcy case, *In re NCW Properties, LLC*, Case No. 18bk20215 (Bankr. N.D. Ill. filed July 19, 2018) (Barnes, J.) (the "Main Case") will be noted as "Dkt. No. ___."

Unsurprisingly, the Motion is opposed by the Plaintiff. The Plaintiff argues that a contract between NCW Properties, LLC (the "Debtor") and the Defendant evidences that the transfer received by the Defendant was property of the Debtor, and that the solvency of the Debtor at the time of the transfer is not clearly established by the Defendant in the Motion. The Plaintiff also argues that the good faith of the Defendant in negotiating the transfer is disputed.

For the reasons more fully set forth below, upon review of the parties' respective filings and after conducting a hearing on the Motion, the court finds that the Defendant has not established that the material facts regarding the elements of the fraudulent transfer claims or the Defendant's good faith defense are undisputed. The Motion must be and, therefore, by separate order concurrent herewith, will be DENIED.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may refer these cases to the bankruptcy courts for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy court judge to whom a case has been referred has statutory authority to enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy court judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the bankruptcy court judge may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court judge may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1) & (c). Absent consent, the bankruptcy court judge must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy court judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall,* 564 U.S. 464 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court judge hearing and determining the matter. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 685 (2015) (parties may consent to a bankruptcy court judge's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

A complaint to determine, avoid or recover fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, such as the Complaint in this case, is a matter that arises in the Bankruptcy Code and is a core proceeding. 28 U.S.C. § 157(b)(2)(H); *KHI Liquidation Tr. v. Wisenbaker Builder*

2

*Servs., Inc.* (*In re Kimball Hill, Inc.*), 480 B.R. 894, 906–07 (Bankr. N.D. Ill. 2012) (Barnes, J.).  It follows that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure[2] to adversary proceedings, is also a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) & (2).  Further, in accordance with *Stern*, 564 U.S. at 499, the bankruptcy court has constitutional authority to determine fraudulent transfer claims as such claims "are at the core of the federal bankruptcy power."  *Bodenstein v. Univ. of N. Iowa* (*In re Peregrine Fin. Grp., Inc.*), 589 B.R. 360, 364–65 (Bankr. N.D. Ill. 2018) (Doyle, J.).  More importantly, no party has contested the jurisdiction or authority of this court in entering final orders in this matter.  In light of the foregoing, the court concludes that it has constitutional authority to finally decide the Motion either directly or through the parties' consent.

Accordingly, the court has the jurisdiction, statutory authority and constitutional authority to hear and determine the Motion.

PROCEDURAL HISTORY

In taking up the Motion, the court has considered the arguments of the parties at the February 15, 2023, hearing on the Motion (the "Hearing"), and has reviewed and considered the following filed documents relating to the Motion:

(1)     John Argoudelis' Rule 56 Statement of Facts in Support of Its Motion for Summary Judgment [Adv. Dkt. No. 84] (the "Defendant's Statement of Facts");

(2)     Defendant's Motion for Summary Judgment (Memorandum in Support) [Adv. Dkt. No. 85];

(3)     Plaintiff Donald A. Stukes' (1) Response to Defendant's Rule 56 Statement of Facts, and (2) Statement of Additional Facts [Adv. Dkt. No. 88] (the "Plaintiff's Statement of Facts");

(4)     Plaintiff Donald A. Stukes' Memorandum of Law in Opposition to Defendant John Argoudelis' Motion for Summary Judgment [Adv. Dkt. No. 89] (the "Response"); and

(5)     Defendant's Reply in Support of Motion for Summary Judgment [Adv. Dkt. No. 91].

The court has also taken into consideration any and all exhibits submitted in conjunction with the Motion and the foregoing.  Though these items do not constitute an exhaustive list of the filings in the above-captioned adversary proceeding, the court has taken judicial notice of the contents of the docket in this matter.  *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court judge to take judicial notice of the court's own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).  The court has also considered the procedural history and previous court filings in this proceeding and the Main Case, as is discussed below in detail.

---

[2]     The Federal Rules of Bankruptcy Procedure will be referred to herein individually as "Bankruptcy Rule ___."

BACKGROUND[3]

Liquidating trusts created under bankruptcy plans are generally created for the purpose of gathering the assets of the debtor and making distributions to creditors.  As is often the case with such liquidating trusts, those assets may be comprised of avoidance actions available under applicable law.  This case is no different.  Here the Plaintiff has filed a number of avoidance actions seeking to avoid and recover transfers made by the Debtor in the years preceding the Debtor filing for bankruptcy protection.  Many of the adversary proceedings filed by the Plaintiff concern a complex transaction that occurred in February 2016.  This adversary is one of those proceedings.

To provide context, the Debtor in the underlying bankruptcy case is a limited liability company that was formed in November 2015, with the intent that the Debtor acquire interests in NCW Berwyn RE, LLC, NCW Joliet RE, LLC (the "Joliet Entity"), NCW Elmwood Park RE, LLC (the "Elmwood Entity"), NCW Naperville RE, LLC, NCW Wyoming, LLC, and NCW Operations Aurora, LLC (collectively, the "Carwash Entities").  Pl.'s Stmt. of Facts, at ¶¶ 1–3.  Each of the Carwash Entities owned real property where the managers of the Carwash Entities owned and operated NASCAR branded car washes.  Until the disputed transfer, the Debtor had no assets and conducted no business.  Pl.'s Stmt. of Facts, at ¶ 2.

As the Plaintiff alleges in the Complaint, in February 2016, the managers of the Carwash Entities (who were also the managers of the Debtor) structured a complex transaction (the "2016 Transaction") whereby the assets of the Carwash Entities would be transferred and the Debtor would acquire the interests of the Carwash Entities.  The full details of the 2016 Transaction are not clear from the record thus far.  The Complaint alleges that the 2016 Transaction called for the Debtor to purchase the real property held by the Carwash Entities, then sell that same real property to Store Master Funding IX, LLC and related entities (the "Store Entities"), who thereafter leased the real property to the Debtor.  Compl., at ¶ 21.  The Debtor was to purchase the interests in the Carwash Entities via a loan from the Store Entities.  *Id.* at ¶¶ 22-23.

The Defendant tells a different story.  In the Motion, the Defendant argues that the result of the 2016 Transaction was that the real property was deeded from the Carwash Entities directly to the Store Entities, not to the Debtor.  Mot., Exh. C (Deeds).  Further, the Defendant argues that the 2016 Transaction could not have been fully consummated as the Complaint alleges—the Debtor could not have paid for all of the interests in the Carwash Entities.  It argues that the $3,000,000.00 loan provided by the Store Entities did not provide the Debtor with sufficient funds to pay all interest holders and thus, if all parties that held interests were paid for their interests in the 2016 Transaction, not all parties were paid by the Debtor.  *See* Mot., Exh. G (the "Closing Statement") (Closing Statement from the 2016 Transaction which contains a line item of $8,989,091.00 for membership buyouts and demonstrates that the Debtor would have to provide $4,987,908.17 to close the 2016 Transaction).[4]

---

[3]   Unless otherwise noted, the factual background is taken from undisputed facts as reconciled in the Defendant's Statement of Facts and the Plaintiff's Statement of Facts.  Bankr. N.D. Ill. R. 7056-1 and 7056-2.  The facts are adopted for the purpose of resolving the Motion only.  Fed. R. Civ. P. 52(a)(3).

[4]   The Plaintiff appears to agree with the Defendant's characterization of the insufficiency of cash at the closing of the 2016 Transaction with respect to the buyout of interests in the Carwash Entities.  *See* Pl.'s

Prior to the 2016 Transaction, the Defendant held a 25% interest in the Joliet Entity and a 12.5% interest in the Elmwood Entity. Pl.'s Stmt. of Facts, at ¶ 9. The Debtor contracted to pay the Defendant $595,969.00 for the purchase of his interests in the Joliet and Elmwood Entities and to pay the Defendant for legal services the Defendant had provided to some of the Carwash Entities (not in connection to the 2016 Transaction). *Id.* at ¶¶ 10, 33. On February 24, 2016, the Defendant received $595,969.00 from GRS Title Services[5] (the "Transfer"). *Id.* at ¶¶ 12, 16; Mot., Exh. E.

The Debtor continued to operate for two more years until July 19, 2018, when the Debtor filed for protection under chapter 11 of the Bankruptcy Code. Voluntary Petition for Non-Individuals Filing for Bankruptcy [Dkt. No. 1]. In the Main Case, the Debtor ceased operations and sold its assets. *See* Order (I) Approving and Authorizing Sale of Debtor's Assets Free and Clear of Any and All Liens, Claims, Encumbrances, and Other Interests; and (II) Granting Related Relief [Dkt. No. 72]. On August 20, 2019, the court confirmed the Third Amended Chapter 11 Liquidating Plan of the Debtor [Dkt. No. 160] (the "Plan"), which created the Liquidating Trust and established the Plaintiff as the Liquidating Trustee. Order Confirming Third Amended Chapter 11 Liquidating Plan of the Debtor [Dkt. No. 182]; Plan, Exh. A. The Plaintiff is tasked with pursuing avoidance actions on behalf of the Liquidating Trust for the benefit of the Debtor's creditors. *Id.* at § 2.2.

The Plaintiff filed the Complaint on July 16, 2020, seeking to avoid the Transfer to the Defendant as fraudulent under two theories. Count I of the Complaint alleges that the Transfer is fraudulent under section 548(a)(1)(B) of the Bankruptcy Code because the Debtor received less than a reasonably equivalent value for the Defendant's interests and because the Debtor was insolvent at the time of the Transfer. For the same reasons, Count II of the Complaint alleges that the Transfer was also fraudulent under 740 ILCS § 160/5(a)(2), incorporated by section 544 of the Bankruptcy Code. Under section 550 of the Bankruptcy Code, the Plaintiff seeks in Count III to recover any amount of the Transfer avoided in Counts I and II.

SUMMARY OF ISSUES PRESENTED

In the Motion, the Defendant seeks summary judgment in his favor on all counts of the Complaint. The Defendant alleges that: (i) the Plaintiff has failed to provide any evidence to support the "property of the debtor" element necessary to Counts I and II; (ii) the Plaintiff has also failed to provide any evidence of the Debtor's insolvency as of the Transfer; and (iii) the Defendant is entitled to summary judgment with respect to his good faith for value affirmative defense under section 548(c) of the Bankruptcy Code.

In his Response, the Plaintiff argues that the evidence provided by the Defendant and attached to the Motion is in fact the evidence that the Defendant alleges is missing with respect to the "property of the debtor" element. The Plaintiff argues that the agreement itself between the Defendant and the Debtor to sell the Defendant's interests in the Joliet and Elmwood Entities demonstrates that it was the Debtor's assets that were transferred to the Defendant. As to the allegation of missing evidence regarding the Debtor's insolvency, the Plaintiff argues that there is

---

Stmt. of Facts, at ¶¶ 7, 32. The Plaintiff also admits that the Debtor did not provide any cash at the closing of the 2016 Transaction. Pl.'s Stmt. of Facts, at ¶ 15.

[5]   GRS Group Title Insurance was the title company used for the 2016 Transaction. *See* Mot., Exh. A.

5

more than ample evidence in the record to support a finding of insolvency under each of the insolvency tests. Mainly, the Plaintiff relies on his own affidavit and the deposition of the manager of the Debtor. Last, the Plaintiff argues that, based on the same affidavit and deposition, the Defendant is not entitled to judgment with respect to his good faith defense because the Defendant knew that the Joliet and Elmwood Entities were each insolvent and the Defendant strong-armed the Debtor's manager with respect to the buyouts of the interests of the insolvent entities.

## DISCUSSION

The court will consider whether the Defendant has met his burden with respect his allegations that the Plaintiff cannot provide evidence of material elements of the Complaint or if judgment is appropriate at this point with respect to the Defendant's good faith defense. First, however, the court will consider the applicable law, jurisdiction and burdens.

A.      Applicable Law and Burdens

       1.      *Summary Judgment*

Summary judgment is appropriate if: first, on the pleadings, moving papers and affidavits or other evidence submitted therewith there is no genuine issue of material fact; and, second, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e) (made applicable to this case by Bankruptcy Rule 7056); *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018). The burden of proof on summary judgment rests squarely on the movant. *EEOC v. Watkins Motor Lines, Inc.*, 553 F.3d 593, 596 (7th Cir. 2009); *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 921–22 (7th Cir. 2007).

The purpose of summary judgment is to enable the early disposition of purely legal issues (or the early legal disposition of an entire matter) where there is no evidentiary dispute necessitating a trial. *Weber-Stephen Prods. LLC v. Sears Holding Corp.*, Case No. 13cv01686, 2015 WL 9304343, at *4 (N.D. Ill. Dec. 22, 2015); *Newman v. Assoc. Bank, Nat'l Ass'n (In re World Mktg. Chi., LLC)*, 574 B.R. 670, 677 (Bankr. N.D. Ill. 2017) (Barnes, J.).

The movant must, with citation to materials in the record, demonstrate that no genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original); *World Mktg.*, 574 B.R. at 677.

Summary judgment motions "are usually … decided on documentary evidence." *Anderson*, 477 U.S. at 251 (internal quotations omitted). At this stage, "it is not the court's function to resolve factual disputes or to weigh conflicting evidence." *Chi. Reg'l Council of Carpenters Pension Fund v. Jerald Van Der Laan (In re Van Der Laan)*, 556 B.R. 366, 372 (Bankr. N.D. Ill. 2016) (Schmetterer, J.) (citations omitted); *see also Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 (7th Cir. 1994) ("[T]he appropriate proceedings for such fact-finding is a bench trial and not the disposition of a summary judgment motion."). It is outside the judge's province to assess the credibility of evidence on a summary judgment motion. *Anderson*, 477 U.S. at 255. It is therefore necessary for the court to consider at this stage what material facts are undisputed, whether by express agreement or by failure

6

to carry a party's burden with respect thereto. *See, e.g., Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).

The court in considering summary judgment motions construes the evidence and all reasonable inferences in favor of the non-moving party. *Durable Mfg. Co. v. U.S. Dep't of Labor*, 578 F.3d 497, 501 (7th Cir. 2009). When a material fact or set of facts gives rise to competing, but reasonable, inferences, then there is a genuine issue that precludes summary judgment. *Coles v. City of Chicago*, 361 F. Supp. 2d 740, 741–42 (N.D. Ill. 2005).

As the foregoing makes clear, normally the Defendant, as the movant, would bear the initial burden of demonstrating the lack of a genuine issue of material fact by pointing to "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits" that support its Motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). Once the Defendant has met that burden, the Plaintiff must offer evidence in response to establish that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The Plaintiff would have to offer more than mere allegations or denials in response to defeat the Motion. *See Sylvester v. Martin (In re Martin)*, 130 B.R. 930, 937 (The "response must point to specific facts showing a genuine issue for trial.") (*citing Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248).

The Supreme Court in *Celotex* did, however, open the door to a practice known as "no evidence" motions for summary judgment. *Celotex*, 477 U.S. at 319, 322–23 (reversing the Court of Appeals for the District of Columbia Circuit's determination that a defendant's motion for summary judgment was defective because it failed to cite to evidence to negate the plaintiff's allegations). Specifically, the Supreme Court stated that "[i]n our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

The Defendant's Motion is just such a "no evidence" motion for summary judgment. It contends that the Plaintiff has no evidence to support material elements of Count I and II—claims on which the Plaintiff bears the burden of proof at trial. In response to such a "no evidence" motion, the Plaintiff must provide "affirmative evidence." *See Anderson*, 477 U.S. at 256.

2.      *Fraudulent Transfer*

Sections 544 and 548 of the Bankruptcy Code allow a trustee to avoid a transfer of property of the debtor for the benefit of creditors. In Count I, the Plaintiff relies on section 548, which provides in relevant part,

> (a)(1) The trustee may avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> …
>
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

7

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1).

Count II relies on section 544, which entitles the Plaintiff to avoid a transfer of the Debtor that is voidable "under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544(b)(1). The Plaintiff relies on 740 ILCS § 160/5(a)(2) as providing the applicable law to avoid the Transfer and alleges that there was a creditor of the Debtor at the time of the Transfer that could have done so. 740 ILCS § 160/5 is Illinois' fraudulent transfer cause of action and provides that:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS § 160/5(a)(2).

Both Counts I and II require that the Plaintiff prove that the Transfer was property of the Debtor and that the Debtor was insolvent at the time of the Transfer or rendered insolvent by the Transfer.

(a)      Property of the Debtor

The Plaintiff alleges that the Transfer was property of the Debtor because the Debtor had a right to the funds transferred to the Defendant and relinquished that right as part of the 2016

8

Transaction.  "The essence of a transfer is the relinquishment of a valuable property right." *Allan v. Archer-Daniel-Midland Co. (In re Commodity Merchants, Inc.)*, 538 F.2d 1260, 1263 (7th Cir. 1976).

The Plaintiff carries the initial burden of proving all elements of fraudulent transfer claims *Frierdich v. Mottaz*, 294 F.3d 864, 867 (7th Cir. 2002); *Krol v. Wilchek (In re H. King & Assocs.*, 295 B.R. 246, 284 (Bankr. N.D. Ill. 2003) (Squires, J.).  That burden must be satisfied by preponderance of the evidence.  *Baldi v. Lynch (In re McCook Metals, L.L.C.)*, 319 B.R. 570, 587 (Bankr. N.D. Ill. 2005) (Wedoff, J.).  If the Plaintiff is able to satisfy his burden with respect to the Transfer being property of the Debtor, the Defendant must then prove that the Transfer was not.  *See Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1118 (5th Cir. 1995) (shifting the burden to the defendant to prove the "existence of a constructive trust"); *Daly v. Radulesco (In re Carrozzella & Richardson)*, 247 B.R. 595, 602 (2d Cir. B.A.P. 2000) (shifting the burden to the defendant to prove "only legal title" to the money, rather than control); *see also Chatz v. Stepaniants (In re Fatoorehci)*, 546 B.R. 786, 793 (Bankr. N.D. Ill. 2016) (Hollis, J.) (once plaintiff proves elements of fraudulent avoidance, burden shifts to defendant with respect to those elements).

      (b)    <u>Solvency</u>

For the purposes of fraudulent transfer actions, the Bankruptcy Code provides three tests applicable to determining solvency: (1) the balance sheet test; (2) the "unreasonably small capital" test; and (3) the inability to pay debts as they become due test.  11 U.S.C. § 548(a)(1)(B)(ii)(II)–(III); *Paloian v. LaSalle Bank National Association (In re Doctors Hosp. of Hyde Park, Inc.)*, Case No. 00bk11520, Adv. No. 02ap00363, 507 B.R. 558, 632 (Bankr. N.D. Ill. Oct. 4, 2013) (Schmetterer, J.); *see also* 11 U.S.C. § 101(32).

The choice of valuation method is generally outcome determinative—different methods result in different conclusions regarding solvency.  In most circumstances, using one valuation standard over the other may produce varying results regarding the entity's solvency.  *See Fryman v. Century Factors, Factor for New Wave (In re Art Shirt Ltd., Inc.)*, 93 B.R. 333, 341 (E.D. Pa. 1988) (stating the inappropriate use of a valuation standard is misleading and fictionalizes the business's true financial condition).

The Plaintiff alleges that the Debtor was insolvent under all three methods.

      3.    *Good Faith Defense*

The Defendant alleges that he is entitled to the good faith affirmative defense he asserts in his answer to the Complaint.  Answer and Affirmative Defenses to Liquidating Trustee's Complaint to Avoid and Recovery Transfers [Adv. Dkt. No. 11], at p. 13.

A complaint is not insufficient simply because it fails to anticipate an affirmative defense under section 548(c) and plead the required elements thereunder.  *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019) (as defendants bear the burden on affirmative defenses, it is inappropriate to penalize the plaintiff for failing to anticipate such defenses in a complaint); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("The mere presence of a potential affirmative defense does not render the claim for relief invalid.").

Of course, if all the facts necessary to establish the affirmative defense are in a complaint, the plaintiff has pled herself out of court and the complaint fails. *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Also, when a movant seeks summary judgment on an affirmative defense, the nonmovant is ill-advised to do nothing in response. As the movant's allegations of facts not in dispute will be admitted unless controverted, Bankr. N.D. Ill. R. 7056-2(B); *First Commercial Fin. Grp. v. Hermanson (In re Hermanson)*, 273 B.R. 538, 550 (Bankr. N.D. Ill. 2002) (Barliant, J.), a nonmovant must act or risk being foreclosed.

Thus, the Defendant must demonstrate that the Complaint provides the facts that support the Defendant's good faith defense under section 548 and the Plaintiff's Response must have failed to dispute those facts.

Section 548(c) provides that:

> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, *a transferee or obligee of such a transfer or obligation that takes for value and in good faith* has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548(c) (emphasis added).

As the emphasized language makes clear, section 548(c) has two initial requirements, that the transferee or obligee of such transfer "takes for value" and that the transferee or oblige of such transfer take "in good faith." *Bank of Am., N.A. v. Veluchamy*, 535 B.R. 783, 796 (N.D. Ill. 2015), *aff'd sub nom. In re Veluchamy*, 879 F.3d 808 (7th Cir. 2018).

"'[G]ood faith' requires the transferee to have engaged in the transaction without knowledge of its voidability or fraudulent nature (i.e. that the transfer was intended to defraud the transferor's creditors)." *Veluchamy*, 535 B.R. at 796. While the Bankruptcy Code does not define good faith, *Veluchamy* and others point out that guidance is in abundance in the case law. *Id.* (*citing Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 897–98 (7th Cir. 1988) ("Venerable authority has it that the recipient of a voidable transfer may lack good faith if he possessed enough knowledge of the events to induce a reasonable person to investigate."); *CLC Creditors' Grantor Tr. v. Howard Sav. Bank (In re Commercial Loan Corp.)*, 396 B.R. 730, 745 (Bankr. N.D. Ill. 2008) (Goldgar, J.)).

As this court has observed, such case law provides that, in the context of a section 548(c) defense, good faith includes an objective component. *Brandt v. KLC Fin., Inc. (In re Equip. Acquisition Resources, Inc.)*, 481 B.R. 422, 429 (Bankr. N.D. Ill. 2012) (Barnes, J.). Specifically, the test for good faith asks whether the transferee was placed on inquiry notice regarding the fraudulent nature of the transfer and if so, whether the transferee was diligent in its investigation regarding the transfer. *Bears, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 22–23 (S.D.N.Y. 2007). To determine whether a transferee was put on inquiry notice, the court examines whether the transferee was aware of "suspicious facts that would have led a reasonable [person], acting diligently, to investigate further and by doing so discovery wrongdoing." *Grede v. Bank of N.Y. Mellon Corp. (In re Sentinel Mgmt. Grp., Inc.)*, 809 F.3d 958, 961 (7th Cir. 2016).

10

B.        Property of the Debtor

The Defendant alleges that the Plaintiff has not and cannot provide evidence that the Transfer was property of the Debtor.  The Defendant alleges that the only proof of the Transfer is a confirmation of wire transfer from GRS Title Services to the Defendant.  Mot., Exh. E.  The Defendant further argues that despite the characterization of the 2016 Transaction in the Complaint, the only funds in the 2016 Transaction came from the Store Entities and thus the funds paid to the Defendant as part of the 2016 Transaction could not have been property of the Debtor.  Closing Stmt.

Similar to the Defendant, the Plaintiff relies on the Closing Statement in support of his argument, but argues that it serves as evidence that the Transfer was property of the Debtor because as part of the 2016 Transaction, the Store Entities extended a $3,000,000.00 loan to the Debtor.  This, coupled with the agreement between the Debtor and the Defendant for the purchase of the Defendant's interests in the Joliet and Elmwood Entities and settlement of amounts due to the Defendant, Mot., Exh. I (the "Membership Agreement"), demonstrates that the Transfer was the Debtor's relinquishment of rights in funds that were part of the loan to the Debtor in satisfaction of the Membership Agreement.  The Plaintiff, therefore, would have the court look at the totality of the 2016 Transaction to demonstrate that the Transfer was property of the Debtor.  Resp., at pp. 6–7 (*citing Bachrach Clothing, Inc. v. Bachrach (In re Bachrach Clothing, Inc.*), 480 B.R. 820, 853 (Bankr. N.D. Ill. 2012) and *Veluchamy*, 535 B.R. at 796 in support of argument that the court should collapse the 2016 Transaction).

All of the foregoing serves as support for the conclusion that the material facts regarding the element that the Transfer be property of the Debtor is disputed.  Both parties ask the court to examine the exhibits attached to the Motion, weigh them, and determine that the Transfer was or was not property of the Debtor.  Instead the court finds that the 2016 Transaction was complicated and no party has at this stage carried its burden in persuading the court of their characterization of the transfers that entailed the Transaction.  According to the Closing Statement, the court can determine that the 2016 Transaction involved a $3,000,000.00 loan to the Debtor and that the Debtor was allegedly required to pay $8,989,091.00 to purchase all of the interests in the Carwash Entities.  No party has reconciled those numbers in terms of who was paid and who wasn't (if anyone wasn't).

As the material facts are disputed, the court defers weighing the evidence until the parties present their full case at trial.  *Casey*, 32 F.3d at 1099.  At that time, the court will determine whether the Plaintiff has satisfied its burden in demonstrating that the Transfer was property of the Debtor.  Summary judgment is not appropriate if, in order to issue such judgment, the court must resolve factual disputes and weigh evidence.  *Chi. Reg'l Council*, 556 B.R. at 372; *Casey*, 32 F.3d at 1099.

For all of the foregoing reasons, the Motion will be, by separate order enter concurrently with this Memorandum Decision, denied with respect to the "property of the Debtor" aspect of Counts I and II.

C.        The Debtor's Solvency

Similar to the "property of the Debtor" element, the Defendant argues that the Plaintiff has failed to and cannot present evidence that the Debtor was insolvent as of the date of the Transfer.

Defendant relies on a report of the Defendant's expert, William Polash, as evidence that the Debtor was instead solvent as of the Transfer. Mot., Exh. P. (the "Expert Report"). The Expert Report concludes that under all three tests for solvency, the Debtor was solvent as of the Transfers. *Id.* The Defendant therefore argues that, because he has demonstrated the Debtor's solvency, the Plaintiff must produce evidence of the Debtor's insolvency to have Counts I and II survive the Motion.

While Defendant is correct in this latter assertion, the Plaintiff does just that. Attached to the Plaintiff's Statement of Facts is the affidavit of the Plaintiff which provides evidentiary support for the Plaintiff's allegation that the Debtor was insolvent at the time of the Transfer. Pl.'s Stmt. of Facts, Exh. 1. The Plaintiff argues that he is a financial expert and has been involved with the Carwash Entities since 2014 and therefore has first-hand knowledge of the Debtor's financials. The Plaintiff also relies on the deposition of the Debtor's manager as evidence of the insolvency of the Carwash Entities and the Debtor. Def.'s Stmt. of Fact, Exh. H.

Plaintiff does not stop there, however. The Plaintiff also attacks the veracity of the Expert Report based on Mr. Polash's statements regarding it. The deposition of Mr. Polash calls into question the reliability of the Expert Report. Resp., Exh. 2. In that deposition, Mr. Polash testified that he relied on tax returns, but did not verify their accuracy, that he relied on the presumption of $2.4 million in equity infusion, but that infusion never was actualized, and that he mischaracterized a $309,231.00 liability as an asset—all of which materially affect solvency analysis.

While the evidence offered by the Plaintiff in support of the solvency element—his own testimony—may be self-serving, it is evidence. Fed. R. Civ. P. 56(c)(1), (c)(4); 28 U.S.C. § 1746. The Plaintiff has therefore provided evidence in response to the Defendant's allegation that there is none to support the element of the Debtor's solvency.

As noted by the Seventh Circuit, solvency is a question of fact. *Plankinton Bldg. Co. v. Grossman*, 148 F.2d 119, 125 (7th Cir. 1945). In this case, a question of fact that is material to Counts I and II and, as demonstrated by the foregoing, in dispute. No party has demonstrated that the solvency of the Debtor at the time of the Transfer is undisputed. As is often the case, the question of the Debtor's solvency is best determined at trial when the parties can present their evidence, advocate for the appropriate method, present and cross any experts, and the court can weigh the evidence as presented. The Motion will be, by separate order enter concurrently with this Memorandum Decision, denied with respect to the "solvency of the Debtor" aspect of Counts I and II.

D.    Good Faith Defense

In the Motion the Defendant argues that there is no dispute that he gave value for the Transfer and that he did so in good faith. The Defendant offers email exchanges between him and the manager of the Debtor that he alleges demonstrate that the funds he received were after a good-faith negotiation. Mot., Exh. M. The Defendant argues that the Transfer was part of the 2016 Transaction, a more complicated transaction that required the Defendant to sell his interests in the Joliet and Elmwood Entities in order for the Carwash Entities to secure funding. The negotiation between the Defendant and the Debtor's manager was, as the Defendant would have the court believe, one wherein the Defendant was not the party in power and instead pressured to sell.

12

On the contrary, the Plaintiff argues that the Defendant pressured the Debtor's manager for more in order to complete the Membership Agreement. In support of this argument, the Plaintiff relies on the deposition of the Debtor's manager. Mot., Exh. H.

As the court has noted before, the court has concerns with respect to summary judgment requests concerning the good faith defense under section 548(c) because the Seventh Circuit has held that determinations regarding good faith are factual determinations. *Maxwell v. U.S.* (*In re Horizon Grp. Mgmt., LLC*), 617 B.R. 581, 593 (Bankr. N.D. Ill. 2020) (Barnes, J.) (*citing Covey v. Com. Nat. Bank of Peoria*, 960 F.2d 657, 662 (7th Cir. 1992)). Determination of facts is not appropriate at this stage. *Id.* (*citing Chi. Reg'l Council*, 556 B.R. at 372; *Casey*, 32 F.3d at 1099). Thus, summary judgment on good faith defenses is only appropriate where the facts are undisputed. *Anderson*, 477 U.S. at 247–48; *Hotel 71 Mezz*, 778 F.3d at 601.

In this case, the nature of the negotiation of the Transfer is disputed, with each party offering testimony from their side of the negotiation. The Defendant's faith—good or bad—is not resolved and the Motion cannot be granted with respect to the Defendant's good faith defense.

CONCLUSION

For all the foregoing reasons, the court, having considered the arguments of the parties in the Motion, related briefings and at the Hearing, concludes that the Motion is not well taken and will be DENIED by separate order entered concurrently herewith.

Dated: March 24, 2023                    ENTERED:

_____
Timothy A. Barnes, Judge
United States Bankruptcy Court